**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOYCE A. NICE, EXECUTRIX,**

      **Plaintiff,**

    **v.**

                                  **CASE NO. C2-00-584
JUDGE EDMUND A SARGUS, JR.,
MAGISTRATE JUDGE NORAH MCCANN KING**

**WHEELING PITTSBURGH STEEL
CORPORATION, et al.,**

      **Defendants.**

### OPINION AND ORDER

This matter is before the Court for consideration of the Motion by Defendant,
Royal Indemnity Company, seeking summary judgment regarding the claims brought by Joyce
A. Nice, Executrix of the Estate of Patrick L. Nice, deceased. For the reasons that follow, the
Motion for Summary Judgment is GRANTED.

### I.

This case arose following the tragic death of Patrick L. Nice, an employee of
the Wheeling Pittsburgh Steel Corporation. On the morning of April 19, 1999, Patrick L.
Nice died while driving a tractor-trailer for his employer. According to the Complaint, due to
a mechanical failure and overload of steel coils, the load rolled on to the cab where Patrick L.
Nice was seated and thereafter caused his death.

The claims brought by his estate include allegations of intentional torts,
intentional infliction of emotional distress and wrongful death. All of these claims arise under

state law and are before this Court on the basis of diversity jurisdiction.

This case was originally filed in the Jefferson County Court of Common Pleas and was subsequently removed to this Court on May 16, 2000. Thereafter, this matter began its long and tortured history. Several months after the case was removed to this Court, Wheeling Pittsburgh Steel Corporation filed for bankruptcy protection. By virtue of federal bankruptcy law, this matter was stayed on November 27, 2000, subject to further order of the Bankruptcy Court.

Several years later, on October 7, 2004, Bankruptcy Judge Kay Woods issued a three page agreed order between the Wheeling Pittsburgh Steel Corporation and Joyce Nice, as Administrator. By the terms of the order, the Plaintiff herein was authorized to proceed on the claims brought in this Court, but only against the Wheeling Pittsburgh Steel Corporation's insurance carrier, Royal Indemnity Company. The Order states in part the following:

> Counsel for Nice has indicated that if relief from Section 12.2 of the Plan and federal law is granted, Nice would pursue her rights to collect only against Royal & Sun Alliance Insurance Company ("Royal"), WPSC's insurance carrier, under WPSC's general liability policy. WPSC's general liability policy is subject to a deductible (self-insured retention amount) of $500,000. Counsel for Nice has indicated that Nice's proceeding against WPSC's insurance would not impact WPSC unfavorably meaning that WPSC would not be required to pay the $500,000 self insured retention amount and that Nice would only be entitled to a monetary recovery from Royal to the extent that any damages awarded as a result of the Action exceeded $500,000. Furthermore, Nice and her counsel are aware and have considered when agreeing to enter into this Agreed Order that although Royal may provide a defense in the Action, Royal may, in their discretion, assert a reservation of rights defense at a later date.

2

> Because, under these facts, relief from Section 12.2 and federal
> law would not negatively impact WPSC, WPSC has agreed,
> subject to this Court's approval, to allow Nice relief from
> Section 12.2 of the Plan as well as 11 U.S.C. § 524 and 11
> U.S.C. § 1141.
>
> Appearing that the relief requested is appropriate and will not
> adversely impact WPSC, and that good cause has been showed
> for the relief request; ORDERED that Nice be granted
> relief . . . .

(Doc. #13-2).

From this, it is clear that the Bankruptcy Court permitted this case to proceed,

but only to the extent that Wheeling Pittsburgh Steel Corporation had an insurance policy in

effect at the time of Mr. Nice's death that had the potential to provide coverage for the claims

asserted. The Bankruptcy Court expressly provided in the Order that this case would proceed

only against the insurance carrier and not against the Wheeling Pittsburgh Steel Corporation,

which at the time of the Order of the Bankruptcy Court was in reorganization under federal

bankruptcy law.

Thereafter, this case was reactivated in this Court, only to be subject to

additional delays resulting from illnesses suffered by Plaintiff's counsel. The docket in this

case reveals multiple requests for extensions of time filed by counsel for the Plaintiff. From

May 12, 2005 through March 9, 2007 the record indicates that Plaintiff's counsel sought over

five extensions of time, all of which prevented final resolution of the matters raised in this

case. Ultimately, on March 9, 2007, Plaintiff's former counsel moved to withdraw. After

the Court granted the Motion to Withdraw, on June 25, 2007 new counsel for the Plaintiff

entered his Notice of Appearance. Counsel then requested a reasonable period of time to

3

prepare a Memorandum in Opposition to the Motion for Summary Judgment filed by

Defendant Royal Indemnity Company. As of November 2, 2007, the Motion for Summary

Judgment was fully briefed.

## II.

The issues presented in this case are first framed by the limited right, under

Ohio law, for an employee to sue an employer for injuries suffered in the course of

employment. In addition, this case also implicates the effect of federal bankruptcy law with

regard to intentional injury claims brought by the Nice estate against a former employer which

filed for and received bankruptcy protection.

As to the effect of the bankruptcy proceedings, it is clear that the Bankruptcy

Court permitted the Plaintiff herein to proceed only against the insurance company providing

coverage to the Wheeling Pittsburgh Steel Corporation at the time of Mr. Nice's death. The

Order allowed this action to go forward, as agreed to by Plaintiff's former counsel, but

permitted the claims to be asserted only against the insurance carrier, and not the Wheeling

Pittsburgh Steel Corporation. Further, the insurance carrier, Royal Indemnity Company, as an

insurer, may only be liable for the conduct of Wheeling Pittsburgh Steel and only by the terms

of the contract of insurance. Consequently, the Court will first address the potential liability of

the Wheeling Pittsburgh Steel Corporation at the time of Mr. Nice's death. Subsequently, the

Court will then evaluate whether the terms of the insurance policy written by Royal Indemnity

Company in favor of Wheeling Pittsburgh Steel Corporation provides coverage for the claims

asserted.

4

## A. Ohio Law Regarding Intentional Tort Claims by Employees

It is undisputed that Mr. Nice was employed by the Wheeling Pittsburgh Steel

Corporation at the time of his injuries. The claims brought by his estate in this case all arise

under Ohio law. When this Court exercises its diversity jurisdiction, it is required to follow

the law as found by the Ohio Supreme Court; in the event the Ohio Supreme Court has not

addressed the precise issue, this Court then looks to the decisions of the various Ohio courts of

appeals to determine the most likely decision of the Ohio Supreme Court on the same issue.

*Hisrich v. Volvo Cars, Inc.,* 226 F.3d 445, 449 (6th Cir. 2000).

> Turning to state law, the Ohio Constitution provides
>
> For the purpose of providing compensation to workmen and their
> dependents, for deaths, injuries or occupational disease,
> occasioned in the course of such workman's employment, laws
> may be passed establishing a state fund . . . such compensation
> shall be in lieu of all other rights to compensation or damages,
> for such death, injuries, or occupational disease, and <u>any
> employer</u> who pays the premium or compensation provided by
> law, passed in accordance herewith, <u>shall not be liable to respond
> in damages at common law or by statute for such death, injuries
> or occupational disease.</u>

Oh. Const. art. II, § 35. [emphasis added.]

At the time of Mr. Nice's death, the Supreme Court of Ohio recognized an

exception to the exclusivity clause otherwise prohibiting lawsuits by employees or their estates

against their employer. In *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 472 N.E.2d

1046, Syllabus ¶1 (Ohio,1984), the Ohio Supreme Court held "an intentional tort is an act

committed with the intent to injure another or committed with the belief that such injury is

substantially certain to occur." This holding refines the decision in *Blankenship v. Cincinnati*

5

*Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (Ohio, 1982) which held that the Ohio Constitution did not prevent an employee from enforcing common law remedies against an employer for claims involving intentional torts.[1]  Consequently, in order for Royal Indemnity Company to be liable to the Plaintiff, Wheeling Pittsburgh Steel must have first committed an intentional tort against Patrick Nice, "with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones*, 15 Ohio St.3d at 95.  Wheeling Pittsburgh Steel, by virtue of bankruptcy law and the Order from the Bankruptcy Court, is not liable for the claims presented in this case.  Therefore, for Royal Indemnity Company to be liable to the Plaintiff, the policy of insurance issued to Wheeling Pittsburgh Steel must provide coverage for the type of claim filed by the Plaintiff.

Turning to the Defendant's Motion for Summary Judgment, the Court first notes that, without conceding that Wheeling Pittsburgh Steel did commit an intentional tort, as the term is used in *Jones*, Royal Indemnity Company bases its Motion for Summary Judgment upon the lack of coverage of such claims under the policy of insurance it issued to Wheeling Pittsburgh Steel Corporation.

Royal Indemnity Company issued a policy of insurance in effect between August 1, 1998 and June 1, 1999, which covered the period involving the death of Patrick L.

---

[1]Effective April 7, 2005, the Ohio Legislature enacted O.R.C. § 2754.01.  This enactment modifies the decisions in *Jones* and *Blankenship* to provide that the term "substantial certainty" means "that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition or death."  O.R.C. § 2745.01(B).  This statute, having been enacted after the claims arose in this case, is not applicable herein.  The parties have filed supplemental briefing regarding the case of *Kiminski v. Metal & Wire Products Co.*, decided on March 18, 2008 by the Ohio Court of Appeals for the 7th Circuit.  07-CO-15.  The Court found § O.R.C. 2745.01 unconstitutional.  This Court does not apply the statute to this case, since the claims arose before passage of the statute.

Nice. In Coverage A, the policy insured against "bodily injury." Significantly, the same

policy contained the following language:

> **a. Exclusions.** This policy does not apply to:
> **Expected or intended injury.**
> "Bodily injury" or "property damage" expected or intended
> from the standpoint of the insured. This exclusion does not apply
> to "bodily injury" resulting in the use of reasonable force to
> protect persons or property.

Comprehensive General Liability Policy.

In addition to the language of the policy, Royal Indemnity Insurance added an

Employer's Liability Stop Gap Coverage endorsement amending the bodily injury liability

coverage. The endorsement contained the following exclusion:

> IX.     Bodily injury intentionally caused or aggravated by
> you, or bodily injury resulting from an act which
> is determined to have been committed by you with
> the belief that an injury is substantially certain to
> occur.

In *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 790 N.E.2d 1199

(Ohio,2003), the Ohio Supreme Court held that Ohio public policy does not prohibit an

employer from obtaining insurance covering tort claims brought by employees or their estates,

if the employer did not intend to injure the employee but believed that injury was substantially

certain to occur. In other words, under Ohio law, an employer, such as the Wheeling

Pittsburgh Steel Corporation, may not, consistent with Ohio public policy, obtain an insurance

policy covering purely intentional conduct designed to injure an employee. At the same time,

however, a policy of insurance may issue under Ohio law to cover cases in which an employer

did not deliberately intend to injure an employee but believed or had knowledge that an injury

7

was substantially certain to occur. The sole question in this analysis is whether the insurance policy issued by Royal Indemnity Company provides coverage for claims alleging that the employer believed or knew that injury was substantially certain to occur. The parties dispute whether the language of the policy quoted above provides coverage for the claims of the Plaintiff.

In *Simpson v. Intermet Corp.*, Case No. 05-4536, 213 Fed.Appx. 390, 2007 WL 64229 (6th Cir. 2007) ( unpublished), a panel of the Sixth Circuit addressed the same issue. The Court framed the issue as follows:

> . . . whether, under Ohio law, an umbrella policy of insurance which provides coverage for liability for an occurrence in excess of the limits of the insured's primary employer's liability coverage, and which does not exclude coverage for injury arising in the course of employment, but does exclude coverage for injury resulting from an accident expected or intended from the standpoint of the insured employer, effectively excludes coverage for what is known under Ohio law as a "substantial certainty" intentional tort.

*Id.* at *1.

After analyzing the terms of the policy, which, while not identical, are similar to those used in the policy at issue here, together with decisions from other, lower Ohio courts, the Sixth Circuit concluded that the plain language of the policy excluded coverage.

The Sixth Circuit noted that, while the Ohio Supreme Court was silent on the precise question, a number of Ohio courts of appeals had reached the same conclusion. *See McGuffin v. Zaremba Contracting*, 166 Ohio App.3d 142 (Ohio Ct. App. 8th Dist., 2006); *Cincinnati Ins. Co. v. Schwerha*, 2006 WL 1868321 (Ohio Ct. App. 7th Dist., 2006); *Chavis v. AIG Technical Servs., Inc.*, 2005 WL 1177929 (Ohio Ct. App. 10th Dist., 2005); and

8

*Altvater v. Ohio Cas. Ins. Co.,* 2003 WL 22077728 (Ohio Ct. App. 10th Dist., 2003).

The Plaintiff cites this Court to *Talbert v. Continental Cas. Co.,* 157 Ohio App. 3d 469, 811 N.E.2d 1169 (Ohio App.2d Dist.,2004), for the proposition that a general exclusion for injury contained in the policy of insurance does not exclude "substantially certain intentional torts." While this proposition is correct, the case in *Talbert* included a policy which contained an exclusion for only bodily injury intentionally caused by the insured. The policy language in this case is much more specific and literally tracks the language used by the Ohio Supreme Court in defining the "substantial certainty" intentional tort.

The Plaintiff also contends that because the policy defines accident "to include assault and battery unless committed by or at the direction of the insured" that the language of the policy was intended to provide coverage for bodily injury or death of Wheeling Pittsburgh Steel Corporation's employees. The Plaintiff contends that the coverage for assault and battery demonstrates that certain intentional acts are considered accidents. The Court finds, however, that the plain language of the policy exclusion prevents such an interpretation of otherwise unambiguous terms.

The Court concludes that, based upon the clear language of the policy exclusions together with the decision in *Simpson v. Intermet, supra,* and those of the various Ohio courts of appeals cited above, that the policy in question excludes coverage for the claims brought by the Plaintiff in this case.

9

## III.

Based upon the foregoing, the Motion for Summary Judgment filed by

Defendant Royal Indemnity Company (Doc. #69) is hereby **GRANTED**.


**IT IS SO ORDERED.**


                                       3-31-2008

**DATE**                                    **EDMUND A. SARGUS, JR.**
                                   **UNITED STATES DISTRICT JUDGE**